In the Matter of H. SPENCER BREGOFF, Admitted as an Attorney as SPENCER BREGOFF, Respondent.

Second Department, February 7, 1940.

*Harold M. Kennedy* [*Robert Abelow* and *Murray M. Halwer* with him on the brief], for the motion.

*Andrew F. Van Thun, Jr.* [*Joseph B. Handy* with him on the brief], for the respondent.

PER CURIAM. An order was made by this court that there be an inquiry into alleged unlawful and unethical practices in the county of Richmond, impairing the due administration of justice, and into other evils at the bar, to be conducted by the Supreme Court, at a Special Term thereof, before Mr. Justice FRANCIS G. HOOLEY. The order designated Harold M. Kennedy, Esq., to assist in the conduct of the inquiry. By reason of testimony elicited during the course of the investigation a petition was presented to this court in which charges were preferred against respondent and request was made that action thereon be taken as provided by section 88 of the Judiciary Law.

The petition charges that respondent, who was admitted to the bar in February, 1927, (a) paid individuals for procuring negligence cases to be placed in his hands, in violation of the Penal Law and of the Canons of Ethics of the American Bar Association; (b) solicited claims in condemnation proceedings, in violation of statutes and of the Canons of Ethics; (c) corruptly entered into an arrangement with one Harry A. Cohen, not an attorney, to split fees, in violation of the statutes and of the Canons of Ethics; (d) represented a client in the collection of benefits of a war veteran's certificate, resulting in the payment to the client of $1,200, and received for services therein the sum of $400, in violation of Federal statutes; (e) refused to waive immunity in the investigation conducted before the said Special Term; (f) attempted to distort or suppress testimony before Mr. Justice HOOLEY during said inquiry; and (g) corrupted or tampered with, or attempted to corrupt or tamper with, certain jurymen who had been impaneled as jurors in certain causes.

On December 13, 1938, the matter was referred to an official referee to take proof and report with his opinion. The official referee, who was very liberal in his rulings and gave respondent full opportunity to present his defense, has recommended disbarment.

The most serious of the charges is the one last named. The testimony in connection therewith is somewhat conflicting, and

contains inconsistencies, contradictions and retractions. However, an analysis of the record fairly discloses the following:

In September, 1933, respondent represented the plaintiffs in a negligence action, called the " *Gundersen* case," at a Trial Term of the Supreme Court of Richmond county. The jury rendered verdicts for wife and husband aggregating $67,500. On appeal to this court, the judgment in favor of the wife was reversed and a new trial granted unless she stipulated to reduce the verdict in her favor to $45,000; the judgment in favor of the husband was affirmed. Two members of the court voted for reversal and a new trial. (242 App. Div. 702.) Plaintiff wife accepted the reduction, making the aggregate verdicts $52,500. On appeal to the Court of Appeals there was an affirmance of the judgment. (266 N. Y. 461.)

One of the jurymen in the action was named Simmons, a resident of Staten Island. Simmons had been a client of respondent in 1932, having been recommended by one Miller, related by marriage to Simmons. On the *voir dire*, Simmons, questioned by counsel, testified that he knew of no reason why he could not fairly and squarely sit as a juror in the case; that he did not know respondent or his brothers, although he had heard they were lawyers; that he would not be " prejudiced or sympathetic for one side or the other because of the counsels that are engaged." In addition, there was addressed to the jurymen, as a body, by defendant's counsel, an inquiry whether they ever had any business with Bregoff & Bregoff, or with respondent, who was trial counsel, or with Mr. Cohen, who was associated with respondent and was assisting at the trial. There was no response to these questions, so it may be assumed that the answer was intended to be " No."

The record discloses further that in May, 1932, respondent was retained by Simmons and another in a negligence suit at the instance of Miller; that in connection therewith respondent and his so-called investigator, Cohen, met Simmons on a street in Staten Island and discussed the case with him; that in September, 1933, about the time of the trial of the " *Gundersen* case," respondent requested Miller to arrange for a meeting with Simmons, who had been summoned as a juror; that respondent and Cohen met Simmons and requested him, if he were selected as a juror, to do what he could for the respondent and not to volunteer any information — undoubtedly meaning concerning his prior relationship with respondent; that Simmons was called and chosen as a juror, after having been questioned as above outlined. It further appears that Miller had been requested by respondent to and did arrange for a meeting with Simmons about a year after the trial. It is undisputed that on October 25, 1934, Simmons was in respondent's

office; that the " *Gundersen* case " was then still pending before the Court of Appeals, and that respondent at that time gave Simmons $100. Respondent says that when Simmons approached him in his office Simmons was drunk and that he did not recognize Simmons; that after the latter had told him that he had been a juror in the " *Gundersen* case " respondent remembered him; that Simmons requested a loan of $200, and, after trying to evade such a transaction, he loaned him $100 and received Simmons' demand note therefor. A note for that amount was produced before the official referee. Simmons had testified before the Special Term and swore by affidavit that the $100 was a present. Later, by testimony before the official referee and by an affidavit, which he made at the instance of respondent, Simmons said that the $100 was a loan. Simmons said that prior to February 1, 1938, respondent sent him several letters demanding payment. Respondent, on the other hand, says that he called on Simmons at his home several times asking for payment. In any event, nothing of consequence was done to collect the $100 note until February 1, 1938, when respondent wrote a letter to Simmons demanding payment. Simmons called at respondent's office and advised respondent that he did not have any money with which to pay, but that he owned a claim against another person. A suit was brought thereon by respondent, who has collected part of the claim and applied it to the payment of the $100. The records in another case presently before this court show, and it is not disputed, that shortly before February 1, 1938, a report concerning " ambulance chasing " had been made to the Bar Association of Richmond County by its committee on unlawful practice of the law.

Respondent vigorously denies any wrongdoing. He admits that in May, 1932, he went to the arranged place to meet Simmons concerning the retainer, but that he did not actually see Simmons. Simmons was drunk at the time, so it was left to Cohen, respondent's case investigator, to have a talk with Simmons. It is not claimed that at the time of the trial Cohen did not know that Simmons had been a client of respondent. Respondent denies that at the time of the trial he knew that Simmons had been his client. He also denies that he saw Simmons immediately before the trial of the " *Gundersen* case," and denies that he made any corrupt bargain with him. Cohen also denied that he was present at any meeting with Simmons shortly before the trial. On the hearing before the Special Term and by affidavit, Simmons and Miller both admitted their participation in the jury affair, as above outlined. On the hearing before the official referee and by affidavit made at the instance of respondent, Simmons practically denied such participa-

tion; Miller changed his testimony as to arranging for meetings between respondent and Simmons so as to limit them to the May, 1932, meeting. Both Miller and Simmons claimed that they were compelled in the first instance by one Cosgrove to make false affidavits and give false testimony before the Special Term, although there was not the slightest suggestion that they were not free to testify without compulsion before the Special Term. Cosgrove, who was chairman of the committee on unlawful practice of the law of the Richmond County Bar Association for eight to ten years, was a helpful, voluntary assistant in the inquiry, but there is no reason to find that either of the witnesses was compelled by him to make the affidavit before testifying at Special Term, or that they were coerced to give the testimony that they gave at the Special Term. On the contrary, their retraction by affidavit and testimony suggests that a sinister influence created a favorable, but belated, interest in respondent.

After the affirmance of the judgment in the " *Gundersen* case " by the Court of Appeals, it was paid. Respondent received as his share $22,380.96. Of this he gave to his investigator, Cohen, the sum of $5,000 for his services in investigating and assisting at the trial and numerous other services, although he had been paid in all the cases in which he served, according to respondent. It is unbelievable that this $5,000 could have been paid for such services alone. It is a fair inference that Cohen, who was at the trial and who had seen Simmons in May, 1932, was a part of the corrupt relationship with Simmons and received his reward therefor and for other infamous acts.

There was serious dispute between respondent and Cohen in connection with their financial affairs, resulting in an arbitration. On the arbitration there was a sheet of yellow paper used containing items in connection with the " *Gundersen* case." The figures were taken in part from respondent's record and in part from conversations with respondent. It was received in evidence without objection on the hearing herein. On this sheet there was an item " X 150," which respondent made no effort to explain. Unfavorable inferences may be drawn from this. There was another item indicating that seventy-five dollars had been paid to one " E. M." These initials might stand for Miller. (His name was Ernest R. Miller.) Miller, however, denied receiving any money.

The courts look with serious doubt upon, and weigh with care, the testimony of informers and self-confessed perjurers. Corroboration of their testimony should always be required. But it sometimes happens that significant circumstances and conditions

arise in connection with their participation in a transaction under consideration which dissipate doubt, reconcile inconsistencies and contradictions, and make believable their testimony, otherwise possibly unworthy of belief. So it is here. A significant and vital factor, carrying conviction and corroborating the testimony of these two men, involving respondent and demonstrating that he is guilty as charged, is the transaction with reference to the $100. Why should respondent have loaned Simmons $100? Respondent could not offer a single valid reason. The best he can suggest is that he made the loan to be rid of Simmons — a high price, indeed. He does not even claim it was done in the name of charity. Why should he have had such a transaction with a man who was intoxicated? He surely must have realized that to have any financial dealings with a man who had served on a jury which had rendered an unusually large verdict, in which he had a very alluring interest, in a cause which had not been finally determined, would point at him the finger of suspicion that this was a questionable — and not the first — financial transaction since the trial of the action over a year before. The inevitable conclusion from the relationship of the parties and the nature of the transaction, based upon all the believable testimony, is that this was a gift for corrupt services rendered at the trial of the " *Gundersen* case," and that it is not unlikely that other moneys passed between the parties since the trial. Simmons was of the type that would be coldly indifferent to the form the dealings took so long as he received money, of which he said he was in need. The note was merely a cloak to cover a dishonest transaction. The contradiction between respondent and Simmons as to the alleged mode of communication in seeking payment of the note up to February 1, 1938, without proof supporting either, warrants an inference that neither visits were made nor letters written, and that it was not until February 1, 1938, that a demand was made. Even this, and also the suit against the third party on behalf of Simmons, came at a time when the Bar Association's investigating activity began to attract attention. It is reasonably certain that both were fictitious and done to accredit the alleged loan of $100.

The payment to his investigator of nearly twenty-five per cent of his $22,380.96 fee and the payment to " X " of $150 in the " *Gundersen* case " confirm the view that corrupt practices were at work in that case.

The official referee does not make any direct finding of embracery. He merely says that respondent's " attempts to cover up his activities in the *Gundersen* case have been proven." This court, however, finds that there was a corrupt arrangement between

respondent and the juryman Simmons by which Simmons was to omit to disclose his former relationship with respondent and to act favorably for plaintiffs in that case; and that therefor he was thereafter paid at least the sum of $100 by respondent. Respondent is guilty of (1) embracery, as defined by section 376 of the Penal Law, and (2) a violation of section 273 of the Penal Law for deceit and collusion with intent to deceive the court and the defendant in the " *Gundersen* case."

In view of the foregoing it follows that respondent's usefulness at the bar has come to an end. Therefore, it is unnecessary more than to mention the other charges. The testimony as to expenditures made and the circumstances thereof, coupled with missing ledger sheets, warrant the conclusion that respondent was guilty of paying individuals for procuring negligence cases, in violation of section 270-d of the Penal Law. The court also finds that respondent is guilty of splitting fees with Cohen, in violation of the Canons of Ethics, and of advising Simmons to tell a false story before the Special Term concerning the receipt of money from respondent. The charge of soliciting claims in condemnation proceedings is dismissed. While the charge as to the veteran's certificate contains some very suspicious circumstances involving respondent, it must be held that the charge has not been proved and, therefore, it is dismissed. The court's determination on the other charges makes it unnecessary to consider here the charge of refusing to waive immunity, which is considered at length in *Matter of Ellis* (258 App. Div. 558), decided herewith.

There has been no question raised as to the admission or exclusion of testimony.

In view of the findings made herein the court has no alternative but to adopt the recommendation of the official referee.

The motion to confirm the report of the official referee should be granted and respondent disbarred.

Present — LAZANSKY, P. J., JOHNSTON, ADEL, TAYLOR and CLOSE, JJ.

Motion to confirm report of official referee granted, respondent disbarred and his name ordered to be struck from the roll of attorneys.